The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WSOU INVESTMENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>F5 NETWORKS, INC.,<br><br>Defendant. | Civil Action Nos. 2:20-cv-01878-BJR<br>No. 2:21-cv-00124-BJR<br>No. 2:21-cv-00125-BJR<br>No. 2:21-cv-00126-BJR<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION |

## I. INTRODUCTION

This case involves four separate patents that Plaintiff claims Defendant is infringing. In June 2022, the Court issued two orders resolving the parties' then-outstanding discovery disputes. Plaintiff has moved for reconsideration of one of those orders, arguing that the Court committed manifest error. Having reviewed the motion, the record of the case, and the parties' arguments at a hearing, the Court will deny Plaintiff's motion for reconsideration. The reasoning for the Court's decision follows.

## II. BACKGROUND

In a June 27, 2022 order, the Court ruled on a slew of outstanding discovery disputes that

the parties had been unable to resolve for months.  Order on Discovery Disputes, Dkt. 158.[1] Among other things, the order denied Plaintiff's motion to compel documents related to "customer implementations of [Defendant's] DNS product."  *Id.* at 6-7.  In its motion for reconsideration of the order, Plaintiff argues that these documents (which Plaintiff now terms "Configuration Documents") are vital to its ability to oppose Defendant's summary judgment motions and that the Court committed manifest error in denying its motion to compel.  Pl. Mtn. for Reconsideration, Dkt. 177.

On November 15, 2022, the Court held a hearing on the motion for reconsideration.  At the Court's request, the parties prepared and filed slide decks detailing the technical aspects of the documents at issue, now filed on the docket.  Dkts. 209, 212.

### III.   LEGAL STANDARD

To succeed on a motion for reconsideration of a court's prior order, the moving party must show "manifest error in the prior ruling" or "new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence." LCR 7(h). Reconsideration is an "extraordinary remedy," and the moving party bears a "heavy burden." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *Jackson v. Aliera Companies, Inc.*, 2020 WL 5984075, at *1 (W.D. Wash 2020).

Here, Plaintiff argues that the Court committed manifest error in its June 27 order, not that new facts or legal authority have come to light.

---

[1] All docket numbers cited herein refer to the docket of Case No. 21-cv-126.

2

## IV.   DISCUSSION

In its opposition to Plaintiff's motion for reconsideration, Defendant argues that the motion merely repeats arguments the Court has already rejected, that the nature and scope of the Configuration Documents has never been articulated in any of Plaintiff's filings, that the documents are of minimal relevance, and that they would be very burdensome to produce. *See* Dkt. 194.

In its motion for reconsideration, Plaintiff characterized the Configuration Documents as "documents showing specific customer implementations and configurations that demonstrate F5's BIG-IP DNS is actually deployed in a way that meets the claim limitations." Pl. Mtn. for Reconsideration, Dkt. 177 at 8. In other statements Plaintiff made in its discovery motions, Plaintiff referred to "configurations," "implementations," and "interfaces" of Defendant's product BIG-IP but did not define what those words meant in this context.

During the November 15 hearing, Plaintiff described the Documents with specificity for the first time. Plaintiff noted that BIG-IP functions as a domain name system ("DNS") server that receives queries from a user of a website (such as when the user clicks a hyperlink on the site) and routes the query to one of the website's servers, which then handles the user's request. Pl. 11/15/22 Presentation, Dkt. 209 at 4, 6-8, 14-15, 19. One of the parties' major disputes on summary judgment concerns how BIG-IP determines which server should handle a particular query. Plaintiff's patent describes, *inter alia*, a DNS server that receives real-time status information from several website servers and uses a "load-balancing algorithm" to choose the server best equipped to handle the query without becoming overloaded. Order on Claim Construction, Dkt. 89 at 15-17. In contrast, the prior art used a round-robin method of selecting a server, which did not attempt a status-based load-balancing. Pl. 11/15/22 Presentation, Dkt. 209 at 6. Defendant explained that,

3

when it sells its BIG-IP product, the default server-selection method is round-robin but that there are approximately 15-20 other possible configurations of the product that use different methods. Defendant's customers can choose whichever configuration they prefer.

Plaintiff argues it is crucial to understand the technical specifications of the configurations Defendant's customers are using because some possible configurations (particularly those called "Wide IP" and "DNS Express") more closely resemble the patented system than others. *See* Pl. 11/15/22 Presentation, Dkt. 209 at 42. Plaintiff claims that, while Defendant has provided summaries of the different configurations (in what the parties call the "MacVittie Reports"), these summaries omit the most relevant information. *Id.* at 61. In particular, Plaintiff claims that it needs the "name(s) of [the] load balancing algorithm used by each BIG-IP DNS with Wide-IP or DNS Express," the number and types of servers in a given "pool" of servers, the number of pools of servers, and the total number of BIG-IP systems using one of these highly relevant configurations. *Id.* at 42. The parties seem to agree that none of this information is maintained in any searchable, readily accessible, or easily readable format. Rather, the information could only be obtained by extracting and then interpreting raw data generated by each BIG-IP system. Def. 11/15/22 Presentation, Dkt. 212 at 8; *see* Pl. 11/15/22 Presentation, Dkt. 209 at 24-25, 29. This data is not only voluminous but also recorded in "computer language" (as counsel put it), and Defendant stated it would need to design a specialized program to organize and "translate" the data into something humans can understand. Even assuming an effective program could be designed, Defendant estimated that obtaining the information Plaintiff seeks could take well over a year due to the volume and complexity of customer data the program would need to process. During the November 15 hearing, Plaintiff proposed narrower requests for a representative sample of the key configurations, but the parties disagree whether this would save a significant amount of

4

time. While disputing how burdensome the production would be, Plaintiff maintains that the information is highly relevant and outweighs the burden.

Even assuming *arguendo* that the information sought by Plaintiff is as relevant as claimed, it would not follow that the Court committed manifest error in its June 27 order, because Plaintiff never properly identified what the Configuration Documents were or explained their relevance in any of its prior filings. In fact, Plaintiff was exceedingly vague prior to the November 15 hearing. In a visual timeline created for the hearing, Plaintiff outlined dozens of the times it had allegedly asked for the Configuration Documents since the case began, but a closer examination reveals that these requests were neither specific nor as numerous as Plaintiff implies. Pl. Mtn. for Reconsideration, Dkt. 209 at 36-40.

In their March 18, 2022 motion to compel, where Plaintiff most explicitly addressed the Configuration Documents (calling them "Implementation Documents" at the time), it described them only as "documents [that] show how the Accused Products are used and their particular configuration." Pl. Mtn. to Compel, Dkt. 118 at 4. Plaintiff said that the documents related to implementations of "F5's PEM, SDC, and DNS products" but did not identify which aspects of these products were relevant. *Id.* at 3. For example, Plaintiff never suggested that it sought information related to BIG-IP's load-balancing algorithm and the number of servers and server pools. Plaintiff also did not identify which configurations of these products were relevant and never mentioned "Wide IP" or "DNS Express" prior to its motion for reconsideration. This combined lack of any detail as to product information or particular configurations implied that Plaintiff sought every category of data on every possible configuration of all three products from every customer who had purchased one. As Plaintiff now admits, the vast majority of this

information would not be relevant to its claims.[2]

In its motion for reconsideration, Plaintiff essentially replaced the motion to compel's language of "documents [that] show how the Accused Products are used" with "BIG-IP's load-balancing algorithm and server-pool information" and "their particular configuration" with "Wide-IP and DNS Express." *See* Pl. Mtn. to Compel, Dkt. 118 at 4. The fact that Plaintiff finally identified the relevant product information and configurations does not justify granting its motion for reconsideration. Plaintiff needed to identify this information before the Court issued its June 27 order, and its motion to compel did not come close. The Court could not have committed manifest error by overlooking the importance of discovery that Plaintiff had not even identified. Plaintiff's motion to compel also made only a conclusory argument as to relevance, saying the "implementation documents" would "show infringement of the asserted method claims and damages model." *Id.* This is clearly insufficient. Again, even if Plaintiff belatedly made a more substantive relevance argument during the November 15 hearing, the Court could not have committed manifest error in its June 27 order by rejecting an argument that Plaintiff had not yet made.

Plaintiff's timeline also claims that the Configuration Documents were identified in its February 14, 2022 consolidated discovery brief. Pl. 11/15/22 Presentation, Dkt. 209 at 38. However, the quoted portions of that brief do not even mention the words "configuration" or "implementation," let alone contain a description that remotely resembles how Plaintiff is now characterizing the Configuration Documents. *See id.* (quoting Dkt. 99 at 9-11). The terms in

---

[2] Even crediting Plaintiff's conservative estimates of the production burden, this would have involved processing massive quantities of data. *See* Def. 11/15/22 Presentation, Dkt. 212 at 9.

which Plaintiff apparently described the Configuration Documents—namely, as "customer demand documents (RFIs, RFPs, and requests thereto)"—hardly overlap with later descriptions of the Documents, and there was no reason to assume that the motion to compel referred to the same discovery. *Id.* Furthermore, the term "customer demand documents" could conceivably mean many different things and certainly does not identify (or use terms suggesting) the algorithms, server information, and configurations that Plaintiff described in its motion for reconsideration. Plaintiff's February brief also did not make even a conclusory argument as to the relevance of the documents, noting only that Defendant had not produced them. *See* Pl. Consolidated Discovery Brief, Dkt. 99 at 9. Thus, in none of the motions filed before the Court's June 27 order did Plaintiff make a substantive argument as to relevance, much less a persuasive one that would justify the substantial burden that would be imposed. It would have been error for the Court to compel production of the Configuration Documents under these circumstances.

In summary, Plaintiff failed both to identify the information it sought and to explain its relevance at any time prior to the June 27 order. Plaintiff's occasion use of the words "implementation" or "configuration" without further definition essentially rendered them meaningless. Plaintiff never used the terms "load-balancing algorithm" or "server pools" in any of its briefs. Even now, Plaintiff continues to shift the boundaries of the Configuration Documents by attempting to narrow their scope, first during its motion for reconsideration and again during the November 15 hearing on that motion. A motion for reconsideration is not the appropriate time to define and narrow a discovery request for the first time, and Plaintiff's failure to do so earlier supports the Court's June 27 decision. Plaintiff thus failed to identify both what documents it wanted and why it wanted them prior to its motion for reconsideration, and the Court did not err in finding this showing insufficient.

Although it is not necessary to reach the parties' dispute regarding the burden of producing the Configuration Documents, the Court also notes that even a relatively minor burden would significantly prejudice Defendant at this stage. Plaintiff's failure to identify the nature and relevance of the Documents from the outset has already delayed this case by necessitating briefing, oral presentations, and consideration of its motion for reconsideration. Reopening discovery and potentially allowing the parties to amend their summary judgment briefs would delay it by months more. This is particularly likely given that the parties were seldom able to agree on even the smallest issues during the normal discovery period, frequently requesting Court intervention that, given the technical complexity of this case, could not be granted instantaneously. Although both parties certainly played a role in those frequent delays and disagreements, the Court has previously admonished Plaintiff for burdening the Court with over-frequent and unmanageably voluminous or disorganized filings. Order on Motion to Amend, Dkt. 175 at 5. Granting Plaintiff's motion for reconsideration would thus expose Defendant to a high risk of similar practices prolonging the case, only to remedy a problem that Plaintiff's lack of earlier clarity created. All of the relevant factors, in addition to Plaintiff's very high burden, counsel against doing that.

### V.     CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiff's motion for reconsideration (Dkt. 177). The Court's scheduling order suspending all upcoming deadlines (Dkt. 207) is hereby extended until the Court rules on the parties' outstanding motions for summary judgment. All of the parties outstanding motions to seal various filings are GRANTED.

DATED this 28th day of November, 2022.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE